## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANTHONY FARRIER                                    CIVIL ACTION

VERSUS                                                      NO. 17-7955

DARREL VANNOY, WARDEN                      SECTION: "R"(1)

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### State Court Factual and Procedural Background

Petitioner, Anthony Farrier, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On November 3, 2011, Farrier was charged by a bill of indictment with the aggravated rape of M.C. in violation of La. Rev. Stat. § 14:42.[1] On January 6, 2014, the state amended the bill of indictment to charge petitioner with sexual battery in violation of La. Rev. Stat. § 14:43.1(C)(1) rather than aggravated rape.[2] On January 9, 2014, after the trial had commenced, the state amended the charge to sexual battery with a victim under the age of thirteen in violation of La.

---

[1] State Rec., Vol. 2 of 7, Bill of Indictment dated November 3, 2011. Pursuant to La. Rev. Stats. § 46:1844(W)(1)(a), in order to protect the victim's identity, the indictment refers to the victim as "M.C.," while the Fourth Circuit employed the pseudonym "Admirabilis."

[2] State Rec., Vol. 2 of 7, Bill of Indictment amended January 6, 2014; minute entry dated January 9, 2014.

Rev. Stat. § 14:43.1(C)(2).[3]  On January 9, 2014, a jury found petitioner guilty as charged.[4]  On February 7, 2014, the trial court denied petitioner's motions for post-verdict judgment of acquittal and for new trial.  On February 10, 2014, the trial court sentenced petitioner to seventy-five years at hard labor, the first twenty-five years to be served without the benefit of probation, parole, or suspension of sentence.[5]  On March 25, 2015, the Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[6]  Petitioner did not seek a writ with the Louisiana Supreme Court.

On July 7, 2015, petitioner filed a pro se application for post-conviction relief with the state district court raising four claims of ineffective assistance of counsel.[7]  On August 3, 2015, the state district court declined to consider one claim for procedural reasons and denied the remaining ineffective assistance of counsel claims.[8]

On September 2, 2015, petitioner filed an application for supervisory writs with the Fourth Circuit Court of Appeal.[9]  On October 20, 2015, the Fourth Circuit found "no error in the district court judgment."[10]  Petitioner filed an application for writ with the Louisiana Supreme Court on November 18, 2015.[11]  On March 31, 2017, the Louisiana Supreme Court denied relief finding "Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104. S.Ct. 2052, 80 L.Ed.2d 674 (1984)" and adopted the reasons assigned by the state trial court, which were attached to the Court's opinion.[12]

---

[3] State Rec., Vol. 2 of 7, minute entry dated January 9, 2014.
[4] Id.
[5] State Rec., Vol. 2 of 7, minute entry dated February 10, 2014; State Rec., Vol. 5 of 7, sentencing transcript of February 10, 2014.
[6] State v. Farrier, 162 So.3d 12330 So. 3d 274 (La. App. 4th Cir. 2015); State Rec., Vol. 5 of 7.
[7] State Rec., Vol. 7of 7.
[8] State Rec., Vol. 7 of 7, judgment dated August 3, 2015.
[9] State Rec., Vol. 6 of 7, Application for Writ, 2015-K-0997, signed September 2, 2015.
[10] State Rec., Vol. 6 of 7, 4th Cir. Opinion, 2015-K-0997, dated October 20, 2015.
[11] State Rec., Vol. 7 of 7, Application for Writ, 15 KH 2134, signed November 18, 2015.
[12] State ex rel. Farrier v. State, 214 So.3d 847 (La. 2017) (mem.); State Rec., Vol. 7 of 7.

In the interim, petitioner filed two additional applications for post-conviction relief which were denied as successive.[13]  He also filed two motions to correct illegal sentence and conviction which also have been denied.[14]

On August 17, 2017, petitioner filed the instant federal application seeking habeas corpus relief in which he asserts ineffective assistance of counsel for failing to: (1) request a continuance after the state amended the charge the day before trial; (2) object to the state expert vouching for the credibility of the victim; (3) conduct an adequate investigation regarding jail telephone calls; and (4) object to the prosecution's improper closing argument.[15]

The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts except as to his claim of ineffective assistance of counsel for failure to investigate.  The state argues that petitioner's remaining claims have no merit.[16]  Petitioner filed a reply.[17]

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in

---

[13] State Rec., Vol. 6 of 7, Application for Post-Conviction Relief filed February 29, 2016; judgment dated March 21, 2016; Application for Writ, 2016-K-0545, undated; 4th Cir. Opinion, 2016-K-0545, dated June 10, 2016.
[14] State Rec., Vol. 6 of 7, judgment dated August 24, 2016, Application for Writ, 2016-K-0957, filed September 19, 2016; 4th Cir. Opinion, 2016-K-0957, dated September 30, 2016; Motion to Correct Illegal Conviction and Sentence as Pursuant to LSA-C.Cr.P.Art. 822 signed December 21, 2016; judgment dated March 7, 2017; Application for Writ, 2017-K-0346, filed April 18, 2017; 4th Cir. Opinion, 2017-K-0346, dated April 24, 2017; State Rec., Vol. 7 of 7, Application for Writ, 17 KH 1004, filed May 12, 2017.
[15] Rec. Doc. 4.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner signed his certificate of service on May 17, 2017.  Rec. Doc. 4, p. 15; Rec. Doc. 4-1, p. 24.
[16] Rec. Doc. 16.
[17] Rec. Doc. 17.

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ

in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at 1701.

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Admirabilis was six-years old at the time of this offense. Shortly after Admirabilis' birth, her mother, Ms. Jones, placed her in the care of Rashelle Farrier, whom Admirabilis refers to as "Nanny." Ms. Jones testified that this arrangement was necessary due to her struggles with drug addiction and that Ms. Farrier's home provided Admirabilis with a stable place to live. Admirabilis lived with Ms. Farrier until Ms. Farrier's relationship with Ms. Jones' ex-boyfriend ended. At that point, Admirabilis was placed in the care of Shirley Hunter, who lived next door to Ms. Farrier in the other half of a shotgun double. The others living in Ms. Hunter's home, off-and-on, besides Admirabilis, included Ms. Hunter's boyfriend, Charles Mitchell, her two teenaged sons, and Mr. Farrier. Mr. Farrier is the adult brother of Nanny and lived in Ms. Hunter's living room on the couch. Admirabilis remained in Ms. Hunter's home despite Ms. Jones' graduation from a drug program because of Ms. Jones' decision to remain in Baton Rouge; Ms. Jones instead chose to visit with Admirabilis and her other children "once or twice per month."
>
> On the occasion of her brother's funeral, Ms. Jones came to New Orleans and decided to visit with Admirabilis, picking her up for an overnight stay with her aunt. While bathing Admirabilis that evening, Ms. Jones noticed that Admirabilis was hypersensitive and reacted in pain when touched in her genital area; and, upon closer examination, the mother observed redness and swelling. Admirabilis then told Ms.

Jones that Mr. Farrier touched her in that area, watched "nasty movies" with her, and had her imitate what happened during the films.

Ms. Jones immediately brought Admirabilis to the emergency room at Children's Hospital.  Admirabilis was examined by Anne Troy, a nurse practitioner.  Genital and rectal swabs were taken pursuant to a sexual assault kit, which did not detect any sperm in those areas.  The New Orleans Police Department was also contacted, and the police investigation began.

B

Detective Jounay Thomas–Ross, a member of the Child Abuse Unit, was dispatched to Children's Hospital in response to this allegation of sexual abuse.  Ms. Jones, in her statement to Detective Thomas–Ross, provided Mr. Farrier's name along with the address where the incident occurred.

Admirabilis then left Children's Hospital and was taken home by her father, Richard Collins, for the evening.  Detective Thomas–Ross located Mr. Farrier's picture in the MOTIONS program.  Detective Thomas–Ross' supervisor, Sergeant Arnold Williams, then went to the home and conducted a single-photo "show-up" identification from which Admirabilis positively identified Mr. Farrier as her abuser.  Admirabilis signed and dated the back of the picture.  A six-photo "show-up" identification procedure was not deemed necessary because Admirabilis lived with Mr. Farrier and thus could easily identify him.

The next day Admirabilis went to the Child Advocacy Center to be interviewed by Nurse Practitioner Troy.  The interview was monitored by Detective Thomas–Ross and recorded on video.  These interviews consist of a medical examination of the victim, then a forensic interview where questions are asked of the child to explain what occurred during the potentially-criminal incident.

The forensic interview of Admirabilis was conducted in the "balloon room" at the Child Advocacy Center.  During that interview, Admirabilis, following some reluctance to disclose and visibly nervous, provided a clear and detailed history of the sexual abuse.  She indicated that Mr. Farrier had engaged in oral, anal, and vaginal sex with her and had used spit and lotion as lubrication for such acts.  Admirabilis identified where she was abused using a diagram of the human body and stated that the abuse occurred in Ms. Hunter's home on a daily basis whenever Admirabilis and Mr. Farrier were alone in the house.  Admirabilis also stated that Mr. Farrier would show her "nasty videos" on his computer, and then Mr. Farrier would tell Admirabilis to imitate what they were doing in that video in various states of undress.  Detective Thomas–Ross watched the interview in an adjoining room and was able to communicate with Nurse Practitioner Troy throughout the interview via an earpiece.

Following a successful identification, Detective Thomas–Ross applied for and obtained an arrest warrant for Mr. Farrier and a search warrant for the residence.  Detective Thomas–Ross then went to the Admirabilis' home on Piety Street in New Orleans; Mr. Farrier answered the door and was immediately placed under arrest.  The police then entered the home and seized a laptop computer belonging to Mr. Farrier.

Following his arrest, Mr. Farrier was held in custody awaiting trial.  During this time, he placed numerous calls on the telephone.  These calls were recorded by the jail, and the jury listened to three of the recordings… .[18]

---

[18] State v. Farrier, 162 So.3d 1233, 1237-1238 (La. App. 4th Cir. 2015); State Rec., Vol. 5 of 7.

7

**Petitioner's Claims**

Farrier makes four claims that his counsel was ineffective in failing to: (1) request a continuance of the trial when the prosecution amended the charge the day before trial; (2) object to the state expert witness vouching for the victim's credibility; (3) adequately investigate the recordings of jail telephone calls; and (4) object to improper comments made by the prosecution during closing argument. As discussed below, these claims have no merit.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. Id. at 697. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all the circumstances. See Strickland, 466 U.S. at 689; Carty v.

Thaler, 583 F.3d 244, 258 (5th Cir. 2009).  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Harrington, 562 U.S. at 104 (citing Strickland, 466 U.S. at 689); Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 693).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  Harrington, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

Because petitioner's ineffective assistance of counsel claims were denied on the merits and present mixed questions of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ----, ----, 129 S. Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington, 562 U.S. at 101 (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

### 1. Failure to Request a Continuance of Trial

In his first claim of ineffective assistance of counsel Farrier contends that his trial counsel's performance was deficient because he failed to move for a continuance of the trial when the state amended the charge from aggravated rape to sexual battery the day before trial. Petitioner claims that "[t]he amendment made the task of presenting a defense under the circumstances insurmountable because the allegations did vary greatly, placing a burden on the defense and taking them by surprise with less than 24 hours to prepare."[19]

The state district court in denying the claim, found "this assertion is without merit in that the charge was amended from one sex offense to another; the State did not amend the charge to reflect a different type of offense as to put a burden on counsel or take counsel by surprise. The factual basis for the amended charge remained the same and counsel was fully prepared to try the case as counsel

---

[19] Rec. Doc. 4-1, p. 8.

was aware that the State would be amending the charge prior to the actual amendment."[20]   The Fourth Circuit found no error in that ruling.[21]   In the last reasoned opinion, the Louisiana Supreme Court found petitioner had failed to show he received ineffective assistance of counsel under <u>Strickland</u> and adopted the district court's written reasons.[22]

"[A] decision on whether or not to seek a continuance is inherently one of trial strategy and, as such, is generally accorded great deference."   <u>Brooks v. Cain</u>, Civ. Action No. 06-1869, 2009 WL 3088323, at *3 (E.D. La. Sept. 21, 2009) (citing <u>McVean v. United States</u>, 88 F. App'x 847, 849 (6th Cir. 2004); <u>Moore v. Casperson</u>, 345 F.3d 474, 490 (7th Cir. 2003)).

Here, petitioner has failed to show that his counsel was deficient for failing to request a continuance of the trial.   There is no indication whatsoever from the record that defense counsel needed additional time to prepare to defend petitioner on the amended charge and petitioner makes no showing of what additional preparation was needed.   Additionally, the state district court indicated that defense counsel was aware, prior to the amendment, that the state planned to amend the charge.   Defense counsel was not surprised by the amendment and had sufficient time to determine whether additional delays in the proceedings were necessary to adequately represent petitioner.   Defense counsel obviously decided that a further delay would not be beneficial, and this Court has no sound basis to second-guess that determination.

Further, petitioner has failed to demonstrate prejudice resulting from the failure to request a continuance of trial.   He has made no showing whatsoever that there is a reasonable probability that the result of the proceeding would have been different if a continuance had been requested.   A

---

[20] State Rec., Vol. 7 of 7, judgment dated August 3, 2015, pp. 1-2.
[21] State Rec., Vol 6 of 7, 4th Cir. Opinion, 2015-K-0997, dated October 20, 2015.
[22] <u>State ex rel. Farrier v. State</u>, 214 So.3d 847 (La. 2017) (mem.); State Rec., Vol. 7 of 7.

continuance is appropriate under Louisiana law where the defense can show prejudice as a result of the amendment of the charge. La. Code Crim. P. art. 489.

In this case, defense counsel represented petitioner for a period of over two years before the trial took place and was aware that the prosecution planned to amend the offense initially charged. The amended charge of sexual battery is a lesser offense responsive to the original charge of aggravated rape. La. Code Crim. P. art. 814(A)(8.1). Petitioner's defense, i.e., that the victim's allegations were not credible, remained the same. There is no indication that additional evidence could have been produced at a later trial nor is there any basis for finding that anything would have been done differently by defense counsel if the trial had been delayed. Petitioner's mere speculation that the defense would have benefitted from a continuance is not sufficient to meet his burden of proof. Williams v. Cain, Civ. Action No. 15-3565, 2017 WL 3491960, at *11 (E.D. La. May 12, 2017), adopted, 2017 WL 3480984 (E.D. La. Aug. 14, 2017).

Farrier has not demonstrated that the state courts' decision rejecting his ineffective assistance of counsel claim based on the failure to request a continuance of trial was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He is not entitled to relief as to this claim.

### 2. Failure to Object to Expert Witness Vouching for Credibility of Victim

Farrier's second claim is that his trial counsel failed to object to the prejudicial testimony of Anne Troy, a nurse practitioner and sexual assault nurse examiner at the Audrey Hepburn CARE Center at Children's Hospital. Petitioner claims that Troy's testimony "consisted of impermissible statements in support of the veracity of the child-witness's statements and particularly that the testimony of the victim in this case was consistent with her telling the truth."[23]

---

[23] Rec. Doc. 4-1, pp. 11-12.

The state district court found that "Ms. Troy did not testify concerning Petitioner's guilt or innocence.  She presented her expert testimony concerning her findings in the matter.  As a result, there was no objectionable testimony and counsel's failure to object was not ineffective."[24]  Those findings were adopted by the Louisiana Supreme Court which found that petitioner had not met his burden under Strickland.[25]

Nurse Troy was qualified as an expert in the field of child maltreatment and sexual abuse of children.  Farrier points to the following portions of Troy's testimony which he contends that his counsel should have objected to as improperly bolstering the victim's credibility:

Q.    And so what happened when you first met [the victim] that day?  What did you do first?

A.    I would have gone out to meet the mom and to have her sign the consents and to make sure mom understood what we were going to be doing, and then I would be taking her into the room where I ask her to promise to tell the truth and I can explain my role, that I'm going to be taking care of her, and then I attempt to establish what the history is that brought her there.[26]

…

Q.    Okay, so how do you begin the interview?

A.    We start out by saying that, you know, we're going to promise to tell you the truth when we're in here, will you promise to tell me the truth when we're talking because my job here is to make sure that you're safe.

Q.    And why do you say that?

A.    The research has shown – I'm not a human lie detector, but what we know is that when you are a medical provider and you're going to be checking their body and you explain to them that you're going to be checking their body and you explain to them that you're there to take care of them medically, and you talk to kids about promising to tell the truth, that kids are more often than not going to tell the truth when they've made a promise to tell the truth, so we take time to establish that with them and

---

[24] State Rec., Vol. 7 of 7, judgment dated August 3, 2015, p. 2.
[25] State ex rel. Farrier v. State, 214 So.3d 847 (La. 2017) (mem.); State Rec., Vol. 7 of 7.
[26] State Rec., Vol. 4 of 7, transcript of January 8, 2014, p. 78.

let them know that I'm not going to misrepresent or lie to you when we're in here as well.  You can ask my anything.[27]

...

Q.     Okay. And what – you said children have often – well, you seen situations where children can be coached into saying something.  Have you seen those situations?

A.     I've actually had in – in the middle of interviewing and talking and taking an incident history where I have children who would present with an inability completely to say anything but one sentence and they repeat it over and over again and you ask them, and you say well what room were you in, or who was there, how did your body feel?  We have certain words that we ask to get an experiential sense that the child was in the room and it was happening to them, and they wouldn't give me anything at all.

Now it could be disassociation because we have research that says that kids can disassociate when they're talking.  So, again I would not come out and say that this is a kid that's lying, but I would come out and say that I did not have a clear and detailed history.   And then I would point them on to someone to do the evaluation and counseling.  So, it stays a red flag and I would notify child protection about the family.

Q.     And so what are the red flags that you look for when you're looking to see if a child has been coached into saying something?

A.     Again, I'm looking for lack of detail and I'm looking for – for instance I had one little boy who said to me when I asked him something, he said, "Well, let me go ask my mommy what she said to say."  And even that, I could say well is it because he told mom and he wants me just to get it from mom.  So that alone, by itself, is not definitive for it but those would be the things that would raise your suspicion, and so we're looking for detail when kids talk.  We're looking for spontaneity and again, we're looking for a consistency in terms of what they tell us.[28]

...

Q.     Have there been situations where children have reported abuse but your assessment of the situation was that they did not give a clear and detailed history of the incident?

A.     Yes, and that would be what I would put is that I did not have a – I would not – I would say I had a history, but I wouldn't put I had a clear and detailed history,  I'd say I have a history from a child, and I would say what the history was.  Because we don't investigate.  My job is to pass on the information in terms of a medical diagnosis and whether it's consistent to the investigators.[29]

...

---

[27] Id., at p. 92.
[28] Id., at pp. 94-95
[29] Id., at p. 96.

Q.      Okay.  And what was your assessment of her interview?

A.      That she gave – she provided me a clear and detailed and spontaneous history of sexual abuse.[30]

Initially, the record reflects that defense counsel objected to Troy testifying as an expert and made numerous objections throughout her testimony.[31]  When the prosecution asked Troy for her assessment of some of the victim's responses, defense counsel objected stating, "Your Honor, objection in terms of the witness testifying in terms of her assessment, whether it was true or not true."[32]  The prosecution responded, "that's not my question.  She makes a conclusion at the end of every case whether the child gave a clear and detailed history," and the trial court overruled the objection.[33]  Thus, petitioner's contention that defense counsel failed to raise any objection to Troy's testimony is false.

Further, at no point during her testimony did Troy opine that the victim was definitely telling the truth.  She did not make any claims as to the underlying truth or falsity of the victim's account.  She specifically stated that she "was not a human lie detector" and explained:

> I can't tell if someone is lying or not by all of the things we just talked about, that we're –we're—even though we are subjectively trained and we're looking at ways to minimize any bias, I cannot walk out of a room and be sure that I have not been in any way lied to and believing something that's not true.  So, I can only say it's with the history given to me, is it clear and detailed, is it spontaneous, is it consistent with the physical findings, and then I pass that information on to the investigators.[34]

Rather than giving an opinion about the victim's credibility or petitioner's guilt, Troy testified how she conducts interviews, identified the objective factors that inform her assessments, and shared her assessment of the victim's interview.  Similar expert testimony admissible has been found to be admissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U .S. 579 (1993), and Lousiana

---

[30] Id., at p. 98.
[31] State Rec., Vol. 4 of 7, transcript of January 8, 2014, pp. 66, 67, 74, 75, 76, 81, 97, 98, 99
[32] Id., at p. 98.
[33] Id.
[34] Id., at pp. 92, 100.

law.  State v. Griffin, No. 2015 KA 1765, 2016 WL 2840309, at *3-6 (La. App. 1st Cir. April 27, 2016); State v. Merwin, 186 So.3d 759, 771-72 (La. App. 4th Cir. 2016), writ denied, 216 So.3d 50 (La. 2017) (mem.).

Troy's testimony did not violate Louisiana law or give cause for Farrier's counsel to challenge his testimony under Daubert or under Louisiana evidence rules.  Farrier has not demonstrated that counsel's performance was deficient or prejudicial in that regard.

The state courts' denial of relief was not contrary to, or an unreasonable application of, federal law.  Farrier is not entitled to relief on this claim.

### 3.  Failure to Adequately Investigate Jailhouse calls

Farrier's third claim is that his counsel failed to adequately investigate the recordings of the jail house telephone calls.  He claims that had defense counsel properly investigated the calls, counsel would have learned that the dates of two of the calls were incorrect.  He further contends that proper investigation would have allowed counsel to lodge meaningful objections to the admission of the phone calls.

The state argues both that the claim is unexhausted and, as a result, now procedurally barred, and, alternatively, has no merit.  The state claims that the state district court found that the issue of the admissibility of the jail tapes had been fully litigated on appeal and, as such, the ineffective assistance of counsel claim was procedurally barred and that the Louisiana Supreme Court incorporated the state district court's ruling into its own.  The state, however, does not address the Strickland reference by the Louisiana Supreme Court which arguably indicated some consideration of the merits of this ineffective assistance of counsel claim.  In light of the foregoing, it is at least questionable whether petitioner's claim is procedurally barred.  However, this Court can pretermit a finding concerning the

procedural bar because, as the state alternatively argues, the claim clearly fails on the merits for the following reasons.[35]

While petitioner claims his counsel failed to adequately investigate the recordings of the jail telephone calls, he failed to provide any evidence in support of these allegations. He did not establish that counsels' investigation was in fact inadequate in any respect—on the contrary, he presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently.

Further, his claim that defense counsel was unprepared to address the recordings is not supported by the record. The record shows that the recordings were provided to defense counsel by September 2012, at the latest, more than a year prior to the trial.[36] Defense counsel admitted that the unredacted tapes of twenty-six calls had been produced and unsuccessfuly attempted to require the prosecution to identify prior to trial which calls it intended to use.[37] At trial, defense counsel stated that she was prepared to make an argument as to every single jail recording.[38] Nonetheless, the trial court gave counsel ten minutes to review the three calls the prosecution intended to play for the jury.[39] Defense counsel listened to the recordings and advised that she was prepared to proceed with argument.[40] Counsel raised objections as to each of the calls, but the objections were ultimately overruled.[41] Further, the Louisiana Fourth Circuit Court of Appeal held the admission of the calls was

---

[35] A federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 (5th Cir.1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir.1992); Corzo v. Murphy, Civ. Action No. 07–7409, 2008 WL 3347394, at *1 n. 5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06–9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

[36] State Rec., Vol. 3 of 7, State's Answer to Motion to Exclude Jail Calls filed September 19, 2012, ("The State has tendered to the defense the jail calls of the defendant thereby placing the defense on notice that any of the calls may be used.")

[37] State Rec., Vol. 3 of 7, Motion in Limine to Exclude Irrelevant, Prejudicial, and Inadmissible Evidence, Specifically Jailhouse Phone Calls Allegedly Made by Anthony Farrier filed September 5, 2012; State Rec., Vol. 2 of 7, minute entry dated September 27, 2012; State Rec., Vol. 4 of 7, transcript of January 8, 2014, pp. 148-149, 151-152.

[38] State Rec., Vol. 4 of 7, transcript of January 8, 2014, p. 149.

[39] Id., at p. 151.

[40] Id.

[41] Id., at pp. 152-161.

not an abuse of discretion.[42]   Under these circumstances, there is simply no basis for finding counsel ineffective in this respect.

Moreover, even if petitioner had made a showing that counsel performed deficiently in failing to adequately investigate the recordings, he would then additionally have to prove that prejudice in fact resulted from the purportedly inadequate investigation and discovery.  To make that showing, he must point to evidence in the record demonstrating that further investigation and discovery would have revealed additional information beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Here, he has not shown that any such beneficial information would have been revealed by further investigation and discovery.

Petitioner contends that the first phone call, alleged to have been made on August 11, 2011, during which he made a statement that "they might find something on the computers"[43], actually occurred on July 11, 2011, the date petitioner was arrested.  He provides no evidence supporting his allegation regarding the date of the phone call nor does he explain the significance of the date of the call.  Even assuming the call occurred on July 11, 2011, the date of the call would not have affected its admissibility.  Further, he has not demonstrated a reasonable probability that the outcome of the trial would have been different had counsel identified the correct date of the phone call.

He asserts that the third phone call, allegedly made to his sister on July 11, 2011, during which petitioner told his sister he was going to try and accept a lesser charge because Hunter and two others told the police that the victim had caught petitioner looking at child pornography and he could not

---

[42] State v. Farrier, 162 So.3d 12330 So. 3d 274 (La. App. 4th Cir. 2015); State Rec., Vol. 5 of 7.
[43] Rec. Doc. 4-2, pp. 24-26.

win, actually occurred on August 11, 2011, after he attended the preliminary hearing. He claims that the incorrect date of the call made it appear that he had information on the date of his arrest that he would not have known if he were not guilty of the offense. However, it is clear from petitioner's statements made during the call that petitioner had learned that information from a police detective.[44] Thus, the date of the phone call was not significant, and petitioner again has not demonstrated a reasonable probability that the outcome of the trial would have been different had defense counsel learned of the correct date of the call.

Petitioner also claims that the contents of the third call were not admissible under La. Code Crim. P. art. 15:451 which provides that the state must affirmatively show that a confession was free and voluntary and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises before it can be introduced into evidence. He appears to claim that his statements during the call were made under the influence of fear or intimidation because other detainees at the jail had made threats towards him.[45]

The provision on which petitioner relies simply does not apply in this instance. At no time during the phone call, or any other phone call, did petitioner actually confess to sexually assaulting the victim. Rather, he repeatedly proclaimed his innocence during many of the phone calls.[46] Moreover, there is no evidence of any misconduct by the state in eliciting any statement that he made to his sister during the third phone call which, like every other phone call, was initiated by petitioner. Thus, an objection made pursuant to La. Code Crim. P. art. 15:451 would not have been successful.

---

[44] Id., at pp. 17 ("The detective said all three of them said I was looking at child pornography and they said [victim] had caught me looking at some."), 18 ("That's what the detective said.").
[45] Rec. Doc 4-2, p. 17.
[46] Id., at pp. 12 ("Who do you think did it, though?"), 14 ("To be honest with you this is starting to look like a set up. And when we get the police report, I have a feeling… I didn't it. I didn't do nothing. I have a feeling that it is somebody else's fault in their house."), 15 ("I know I did not touch [victim]."), 25 ("I ain't done none of that."), 30 ("I never did nothing. Really….I'm being terribly truthful right here. I have not done a thing to her.")

Finally, petitioner claims that his counsel should have argued that the admission of the phone call recordings would result in him being "compelled to take the witness stand" to address them, in violation of his Fifth Amendment right to remain silent.[47]  Farrier, however, was not "compelled" to testify as evidenced by the fact that he chose not to testify.  As such, such an objection would have been meritless.  See Smith v. Puckett, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); see also Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"); see also Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)).

Additionally, federal law holds that a decision of counsel to forgo a particular objection is generally one of trial strategy, and, as such, is normally insufficient to support an ineffective assistance claim.  See, e.g., Wolfe v. Cain, Civ. Action No. 11–2906, 2012 WL 6839718, at *9 (E.D. La. May 14, 2012), adopted, 2013 WL 139871 (E.D. La. Jan. 10, 2013); Rios–Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.").  Such deference is appropriate here where there simply is no reasonable probability that the result of the proceeding would have been different if defense counsel had raised such an objection to the admissibility of the phone calls, and therefore petitioner cannot show the prejudice required to prevail on his ineffective assistance of counsel claim.

---

[47] Rec. Doc. 4-1, p. 21.

### 4.  Failure to Object to Closing Argument

In his final claim of ineffective assistance of counsel, petitioner contends his counsel's performance was deficient because she failed to properly object to the prosecutor's closing argument. He concedes that defense counsel objected but claims she should have argued an objection beyond relevance and should have requested the trial court to rule on the objection and admonish the jury.

Petitioner refers to a portion of the prosecution's rebuttal argument in which the prosecutor stated as follows:

> MS. PATEL:    …What you learned is that she brought to the E.R.  A little girl at the age of six rushed to this E.R. in the middle of the night to endure a rape kit.  A rape kit. Ladies and gentleman there's grown women in this jury, in this courtroom that would absolutely –
>
> MS. ELLIS:    Objection.
>
> MS. PATEL:    -be terrified.
>
> MS. ELLIS: -as to the relevance.  There was no testimony about grown women and their experiences and getting rape kits.[48]

The trial court did not rule on the objection.

Petitioner raised his claim in his application for post-conviction relief.  The state district court found that it had instructed the jury that closing arguments were not to be considered as evidence and that petitioner failed to meet his burden under Strickland.[49]  The Louisiana Supreme Court found that petitioner had not met his burden under Strickland and adopted the state district court's written reasons as its own.[50]

It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference.  Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992); see also

---

[48] Rec. Doc. 4-1, p. 23 (citing closing argument transcript, p. 13).
[49] State Rec., Vol. 7 of 7, judgment dated August 3, 2015, pp. 2-3.
[50] State ex rel. Farrier v. State, 214 So.3d 847 (La. 2017) (mem.); State Rec., Vol. 7 of 7.State. Rec., Vol. 7 of 7.

Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Spicer v. Cain, Civ. Action No. 07–3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007); Rios–Delgado, 117 F.Supp.2d at 589.  Even where an objection might have some chance of succeeding, an attorney is allowed to make a strategic choice to forgo such an objection to avoid antagonizing the jury.  See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992); see also Spicer, 2007 WL 4532221, at *10.

As reflected above, the trial transcript demonstrates that defense counsel objected to the argument by the prosecution.  Thus, to the extent that petitioner initially claimed his counsel failed to raise any objection at all, that claim is false.  The record, however, reflects that the trial court did not rule on the objection.  While defense counsel solely raised an objection as to relevance and did not pursue a ruling or request the court admonish the jury, the failure to do so was not ineffective assistance for the following reasons.

"[C]ounsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." Jones v. Estelle, 632 F.2d 490, 492–93 (5th Cir. 1980).  Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765–66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).  "[It] is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (citations and quotations omitted).  To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence

of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones, 864 F.2d at 356; Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

Farrier has not shown that the statement had an impact on the verdict. The prosecutor's comment was limited. Further, the evidence was not insubstantial as to have been overwhelmed by the single comment. Additionally, the jury was instructed that the attorneys' arguments were not evidence,[51] and there is no reason to believe that they disregarded that instruction. Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Without a showing that the comment had a substantial or injurious effect on the verdict, he has not established that the comment amounted to a constitutional error by the prosecutor. Therefore, defense counsel's failure to raise a different objection, request a ruling on her relevance objection, and move the trial court to admonish the jury did not prejudice petitioner.

For all of these reasons, it is clear that Farrier has not demonstrated that the state courts' decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Anthony Farrier be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

---

[51] The final jury instructions are not included in the state court record, however, the state district court found that it had given such an instruction. State Rec., Vol. 7 of 7, judgment dated August 3, 2015, p. 2. Further, the record reflects that the trial court advised the jury prior to opening statements that "statements made by any of the attorneys in this trial at any time, are not to be considered by yourselves as evidence." State Rec., Vol. 4 of 7, transcript of January 8, 2014, pp. 6-7.

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>see</u> <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  25th  day of May, 2018.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**